## WALT'S ADMINISTRATORS *v.* SWINEHART.

Under the act of the 16th of April, 1840, a valid and subsisting judgment may be transferred, after the death of the plaintiff therein, from the court of the county in which it was originally obtained and entered, to the court of another county; and the suggestion of the death of the party, and the substitution of administrators, may be made before the transfer, in the court of the county in which it was originally obtained and entered, or after the transfer, in the court of the county to which it may have been transferred, for the purpose of proceeding to execution.

Such transfer, where there is no administrator, may be made by a creditor to secure the assets; and so, *it seems*, may it be made by an heir, under similar circumstances.

IN error to the Court of Common Pleas of York county.

*May* 16. The questions were:—1st, Whether, after the death of a plaintiff in a judgment, the judgment could be transferred, under the act of the 16th of April, 1840, from the records of the court of the county in which it was originally obtained and entered, to the records of the court of another county: the judgment being a valid and subsisting one, at the time of the death of the plaintiff therein, and at the time of the transfer. 2d, Whether the suggestion of the plaintiff's death, and the substitution of administrators, could be made in the court of the county to which it had been transferred, for the purpose of proceeding to execution, and at whose instance such transfer, suggestion, and substitution could be

made, where no administrator had been raised previously to the transfer. It appeared, that to August Term, 1821, No. 92, a judgment by acknowledgment was entered of record in the Court of Common Pleas of Montgomery county, in favour of Henry Walt, against George Swinehart, who was then a resident of the said county. It did not appear that any proceedings were had on this judgment, until the defendant had removed from the said county of Montgomery, when a writ of *sci. fa. post annum et diem, et qu. ex. non*, was issued thereon to February Term, 1840, No. 45, which was returned "*nihil.*" An *al. sci. fa.* &c., was thereupon issued to May Term, 1840, No. 8, which was also returned "*nihil;*" whereupon, "*on* the 25th of May, 1840, *judgment for want of appearance was entered.*" It appeared that Henry Walt, the plaintiff in the said judgment, died previously to 1844, but when, did not appear; that after his death, and before letters of administration were granted upon his estate, the judgment, which was a valid and subsisting one, was transferred under the act of the 16th of April, 1840, from the records of the Court of Common Pleas of Montgomery county to the records of the Court of Common Pleas of York county: and entered there on the 23d of October, 1844, to August Term, 1844, No. 132; and that on the same day, the death of the plaintiff was suggested and his administrators substituted. To January Term, 1845, No. 17, a writ of *fieri facias* was issued on the judgment, under which the sheriff levied upon the personal and real estate of Swinehart, the defendant. The paper-book did not disclose at whose instance the transfer of the judgment, &c., was made.

On the 8th of January, 1845, the court, on motion of defendant's counsel, and affidavit filed, granted rules to show cause why the entry of the judgment in the Court of Common Pleas of York county, to August Term, 1844, No. 132, should not be set aside, and the same stricken from the records; and why the *fieri facias*, and all proceedings under it, should not be set aside. On the 17th of March, 1845, the court, after argument, made these rules absolute. On the 9th of May, 1845, the plaintiffs, by their attorney, moved the court to strike off their order of March 17th, 1845, making the rules to show cause absolute; to discharge the said rules, and to reinstate the judgment, *fieri facias*, and all proceedings thereon, or to give such relief as the case required. The court ordered the motion to be entered, but dismissed the same on the 13th of May, 1845. The plaintiffs thereupon sued out this writ, and assigned the following errors here :—

1. The court erred in making absolute the rule to show cause why the entry of the judgment No. 132 to August Term, 1844, should not be set aside, and the same be stricken from the records.

2. The court erred in making absolute the rule to show cause why the *fieri facias* in this case, and all the proceedings upon it, should not be set aside.

3. The court erred in refusing to restore the judgment and *fieri facias*, and all the proceedings had on the same, when asked so to do by the plaintiff, on 9th day of May, 1845.

*Fisher*, for plaintiff in error.

*Evans* and *Mayer*, contrà.—It must be obvious that the act of 1840 contemplated the existence of the parties to the judgment in full life. The acts of Assembly *in pari materiâ*, have always been so construed: Act 20th March, 1810, sec. 10 and 17; Justice's Law, Purd. 7th ed. 687, 690; Act 29th March, 1832, sec. 29, Orphans' Court, Purd. 891. In Rowland ·*v.* Harbaugh; 5 Watts, 365–6, this court has only developed some of the incongruities which would result from a different understanding of the acts. The proceedings on a justice's transcript transferred to another county, as sanctioned in Keck *v.* Applebaugh, 2 Penn. R. 465, the instant execution, could not have been authorized if the parties to the judgment, or any of them, had been dead: in this sec. 17 we have the germ of the act of 1840. If this act allowed a transfer, without living parties, from one county to another, then it allows a transcript from a justice to be entered on the docket, and transferred under the same circumstances. The statutes which authorize the substitution of parties, provide new parties, and do not allow the suit to proceed without them.

A judgment confessed when the plaintiff is dead, is void: Finney *v.* Ferguson, 3 W. & S. 413; and will be set aside, however entered: Hurst *v.* Fisher, 1 W. & S. 438; Kennedy *v.* Pickering, Minor R. 137.

If the act of 1840 did not contemplate a transfer, with all its attendant circumstances and consequences, after the death of the parties, then it no more authorized the transfer, in this case, than if it had never been passed. There was no jurisdiction, and the transfer was a nullity: Elliott *v.* Piersol, &c., 1 Pet. 340; nor was it the act of the court: Allison *v.* Rheim, 3 S. & R. 141.

*May* 18. COULTER, J.—The judgment in this case was a subsisting and valid judgment at the time of its transfer from the

records of the county of Montgomery to those of the county of York. The death of the plaintiff neither obliterated, suspended, nor annulled its lien, or its efficacy. The act of the 16th of April, 1840, was intended by its very terms to give something in addition to and beyond all existing modes of making the lien of a judgment commensurate with the estate of defendant. And upon its transfer to the records of another county, it is to have, by the words of the act, "the same force and effect as to lien, revival, execution, &c., as if the judgment had been originally entered on the docket of the court to which it may be transferred." Now, if the judgment had been originally obtained in York county, it cannot be questioned but that its lien would have remained good after the death of the plaintiff. The case cited from Minor is of no weight here. That was a judgment originally rendered in favour of a dead man. Here the judgment was rendered in favour of a living man, good at the time it was entered, and good after his death. We see no objection whatever in allowing the creditor of a deceased person to transfer a judgment of his debtor in order to secure the assets, when an administrator has not been appointed and qualified to act. The value of the judgment, and indeed its lien, may oftentimes depend upon promptitude of action. Nor do we perceive any incongruity, in permitting the heirs to do the same thing under like circumstances.

Where a verdict has been rendered in favour of a living plaintiff, judgment may be entered on it after his death, as of any time when he was living. And an execution issued in favour of a living plaintiff, may be levied and returned after his death.

It was a good and valid judgment when transferred to York county, and the suggestion of the death of the plaintiff, and the substitution of his administrator, could be as well made in the court of York county after the transfer, and for the purpose of proceeding to execution, as it might have been done before in the county of Montgomery.

The court of the county of York, therefore, erred in striking off the judgment and setting aside the execution. And these orders of the court are reversed, and the plaintiff is at liberty to proceed in the execution of his judgment.

This view of the case renders it unnecessary to consider the third error assigned.